UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL BARNETT,<br><br>Plaintiff,<br><br>v.<br><br>MILLIKAN DR.,<br>RUNYAN HSA,<br>WINNINGHAM AHSA,<br>STEPHANIE RILEY MD,<br>CENTURION CORPORATION,<br>INDIANA DEPT. OF CORRECTIONS,<br>JOHNSON LPN,<br>DIANNA JOHNSON N.P.,<br><br>Defendants. | ) | No. 1:26-cv-00697-JRO-MJD |

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Michael Barnett is a prisoner currently incarcerated at New Castle Correctional Facility ("New Castle"). He filed this civil action alleging defendants have been deliberately indifferent in the treatment of his injured knee. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

## I. SCREENING STANDARD

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

**II. THE COMPLAINT**

Barnett's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). The complaint names as defendants (1) Dr. Millikan; (2) Health Services Administrator ("HSA") Runyan; (3) Assistant HSA ("ASHA") Winningham; (4) Dr. Stephanie Riley; (5) Centurion Corporation; (6) the Indiana Department of Correction ("IDOC"); (7) Licensed Practical Nurse ("LPN") Johnson; and (8) Nurse Practitioner ("NP") Dianna Johnson. Barnett seeks damages. Although his complaint did not expressly seek injunctive relief, he also recently filed a motion for preliminary injunction. Dkt. 15.

On May 19, 2025,[1] Barnett felt his right knee pop while playing basketball, after which the knee became extremely swollen and he could not walk. Barnett

[1] Throughout the complaint, Mr. Barnett frequently refers to events occurring in 2026 when, in context and looking at the attached exhibits to the complaint and when the complaint was filed, it is clear that he meant to say 2025.

shortly thereafter submitted a healthcare request form ("HCRF") and would continue to submit multiple HCRFs about his knee between late May and early January 2026. HSA Runyan and/or AHSA Winningham were responsible for processing or triaging HCRFs, but they often delayed or failed to respond to them. HSA Runyan and AHSA Winningham are both also nurses.

At some point, it seems shortly after the injury, Barnett had an x-ray of his knee that appeared normal. Later, in January 2026, Barnett had another x-ray that showed mild degenerative changes but no other problems.

Barnett saw LPN Johnson on multiple occasions and he would discuss his ongoing knee pain. LPN Johnson's typical response was to downplay his complaints and/or tell him that she would schedule him with a provider. It is unclear whether such scheduling occurred. She also told Barnett on one occasion that Centurion wanted to avoid or delay his having a $50,000 surgery. Centurion has a policy, as directed by IDOC, that an "MRI will not be conducted amid routine care and only conducted after a finding and conclusion of other rudiments" that were not explained to Barnett. Dkt. 1 at 6.

Barnett also saw Dr. Millikan on multiple occasions and discussed his knee pain but he often ignored Barnett's complaints. Barnett also saw NP Johnson on multiple occasions and discussed his knee pain but she often ignored Barnett's complaints.

On June 30, 2025, Barnett was seen by non-defendant NP Teah, who submitted a request that Barnett have an MRI of his knee. Dr. Riley of Centurion denied the request, but this denial was not communicated to Barnett for some

time. At some point, Barnett was provided with a knee brace and a cane to help him walk. Dr. Riley also recommended that Barnett undergo physical therapy as an alternative treatment plan, but no visit with a physical therapist was scheduled for Barnett for several months.

On February 28, 2026, Barnett finally was seen by a physical therapist. The therapist was very concerned about Barnett's knee and believed he had a distal quad tendon tear, which was so severe that it prevented the therapist from conducting any further evaluation or providing treatment. The therapist recommended that Barnett immediately be referred to an orthopedist, which Dr. Riley apparently approved. It is unclear, however, when or if Barnett ever saw an orthopedist.

Barnett saw Dr. Millikan twice in March 2026. At the first appointment, Dr. Millikan told Barnett that there were "two isoechoic masses and that he would review a different time and possibility for a MRI or further treatment." Dkt. 1 at 6. At the second appointment, Dr. Millikan allegedly said that two masses did not "mean there is an obvious problem. He said that any delay in treatment is because the 'corporation' doesn't [want] people leaving the facility. . . . He requested that I get another ultrasound in 3 to 6 months." *Id.* at 7. Dr. Millikan also allegedly said that Barnett's continued pain "doesn't mean there is an obvious problem." *Id.*

Barnett filed his complaint on April 7, 2026. On August 12, he filed a preliminary injunction motion specifically requesting that he be scheduled to have an MRI of his knee. Dkt. 15.

## III. DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.[2]

First, any claims against the IDOC **are dismissed**. The IDOC is a state agency that does not qualify as a "person" that can be sued under 42 U.S.C. § 1983. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012).

Second, any claims against Dr. Riley **are dismissed**. The only two allegations regarding Dr. Riley are that (1) she denied the initial request for an MRI in June 2025, shortly after Barnett originally injured his knee; and (2) she "wrote an assessment plan" for an orthopedic referral after the physical therapist requested it in February 2026. Dkt. 1 at 6. "[T]o prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). The prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference requires more than negligence or even objective recklessness. *Id.* A mere disagreement between medical professionals does not support a deliberate indifference claim. *See Snipes v. DeTella*, 95 F.3d

[2] Mr. Barnett has specified in his complaint that he is "suing for a violation of federal law . . . ." Dkt. 1 at 7. The Court will limit its analysis to whether the complaint states any federal claims against the defendants.

586, 591 (7th Cir. 1996). Also, whether to authorize an MRI or other diagnostic testing typically is a matter of medical judgment and not deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). The single decision by Dr. Riley to deny permission for an MRI for Barnett fairly early in his recovery and treatment for his knee does not sufficiently state a claim that she was deliberately indifferent.

Third, for claims against Centurion, the mere fact that Centurion has a collegial review process that requires outside testing and specialist treatment to be approved by a Centurion higher-up is not on its face unconstitutional. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 659 (7th Cir. 2021). Also, "[i]t is not unusual outside of prisons for patients with painful orthopedic problems to be told to try more conservative treatment, delaying surgery until it appears that nothing less will offer effective relief." *Id.* at 660. However, the Seventh Circuit in *Howell* also recognized that "the collegial review process *could* be a mechanism for denying or delaying medical care that inmates need." *Id.* at 659 (emphasis in original). At the pleading stage, Barnett has sufficiently alleged that Centurion and its employees used the collegial review process as a "cover" for delaying or denying necessary care for inmates based on cost concerns and not medical necessity. *Cf. id.* (noting "[i]t is not difficult to imagine how . . . denials [of requests for outside treatment] might be deemed evidence of deliberate indifference" given that inmate was in continued pain for months from ACL tear and avoiding surgery would save money for contracted medical provider, but affirming grant of post-trial motion for judgment on the evidence

where undisputed trial evidence showed that denials were consistent with medical advice from outside specialist). A *Monell* claim against Centurion **shall proceed**.

Fourth, Barnett has sufficiently alleged that Dr. Millikan, LPN Johnson, and NP Johnson were deliberately indifferent to a serious medical need by disregarding his repeated statements during multiple appointments that he was continuing to experience severe problems with his injured knee.[3] Barnett also has sufficiently alleged that HSA Runyan and AHSA Winningham were deliberately indifferent by their failure to process or delays in processing his multiple HCRFs about his knee. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (holding that inmate adequately stated Eighth Amendment deliberate indifference claims against prison grievance officials who failed to take any action in response to grievances about inadequate health care and that district court should have more liberally construed complaint at screening stage). Eighth Amendment deliberate indifference claims **shall proceed** against Dr. Millikan, LPN Johnson, NP Johnson, HSA Runyan, and AHSA Winningham.[4]

---

[3] The Court recognizes that LPNs have limited capacity to provide medical treatment to patients. *See* Ind. Code §§ 25-23-1-1.2, 25-23-1-1.3 (defining scope of LPN's professional responsibilities). Here, it can reasonably be inferred from Mr. Barnett's complaint that he believes LPN Johnson failed to relay his knee complaints to other medical providers, which is sufficient to state a deliberate indifference claim against her.

[4] As indicated, an inmate does not have a constitutional right to demand that a certain medical test or procedure be done, including MRIs. *See Pyles*, 771 F.3d at 411. However, at the pleading stage and liberally construing Mr. Barnett's complaint, he has sufficiently alleged that in his particular situation, with an MRI having been recommended by one medical provider and Mr. Barnett still experiencing severe pain and difficulty walking nearly a year later with more conservative treatments having been ineffective, that the continued failure to schedule an MRI might be evidence of deliberate indifference, when considered with other evidence of repeated complaints to various

This includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through October 19, 2026,** in which to file a motion to reconsider the screening order.

## IV. CONCLUSION AND SERVICE OF PROCESS

The following claims are proceeding in this action: Eighth Amendment deliberate indifference claims against Dr. Millikan, LPN Johnson, NP Johnson, HSA Runyan, and AHSA Winningham, and a *Monell* policy claim against Centurion. All other claims have been dismissed.

The **clerk is directed** to terminate Dr. Stephanie Riley and Indiana Dept. of Corrections as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants in the manner specified by Rule 4(d). Process shall consist of the complaint filed on April 7, 2026, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve Centurion and its employees electronically. Furthermore, Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed *ex parte*.

---

defendants about his knee that were ignored or given little regard, and HCRFs about the issue that were ignored or delayed in processing.

Defendants also are **ORDERED** to file a response to Barnett's preliminary injunction motion, dkt. 15, when they file an answer or responsive pleading to the complaint.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED**.

Date: 9/17/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Electronic service to Centurion and employees:
Dr. Millikan
HSA Runyan
AHSA Winningham
LPN Johnson
NP Dianna Johnson

MICHAEL BARNETT
943552
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box A
NEW CASTLE, IN 47362